UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROGER YEADON,

        Plaintiff,        Case No. 2:14-cv-178

v.        HON. GORDON J. QUIST

PRIYANIHA WIJAYAGUNARATNE,
et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by federal prisoner Roger Yeadon pursuant to 42 U.S.C. § 1983.  Plaintiff is confined at a Michigan state prison within the Michigan Department of Corrections system.  Plaintiff claims that he was denied health care at Marquette Branch Prison (MBP).  Defendants include Priyaniha Wijayagunaratne, Jeffrey Stieve, Amy Robare, John Doe, Corizon Health Services, and Mental Health Services.

Plaintiff alleges that he was transferred to MBP on November 21, 2013, after being in the custody of the Federal Bureau of Prisons for fourteen years.  Plaintiff complains that he was treated for long term back and spine issues including the loss of sensation in his upper right leg.  Plaintiff initially was prescribed Tylenol and Ibuprofen which were ineffective.  In 2007 and 2008, Plaintiff was prescribed Perocet, a mild narcotic, that effectively relieved his pain.  Plaintiff was transferred to a new prison in 2008, and his new treating doctor changed his prescription to Gabapentin.  This medicine proved less effective than Perocet, but limited the pain to a tolerable

level. However, because Perocet can become habit forming the doctor wanted to get Plaintiff off that medication.

Plaintiff alleges that from September 2008 to November 2013, he was transferred to six different federal prisons and examined by six different doctors. All six doctors continued him on Gabapentin and listed Plaintiff's condition as chronic. In 2008, Plaintiff was treated with Wellbutrin for depression and continued on that medication until his transfer to MBP.

On November 21, 2013, Plaintiff was screened by Defendant Amy Robare after he was transferred to MBP. Plaintiff was informed that he would not receive Wellbutrin because it was not prescribed at MBP. Plaintiff was informed that he would have to kite mental health service at the prison to obtain a substitute. That afternoon during rounds, a nurse informed Plaintiff that he would not received anymore Gabapentin medication once his supply ran out. Plaintiff was examined on November 25, 2013, by Dr. Wijayagunaratne. Dr. Wijayagunaratne told Plaintiff that he would not prescribe him Gabapentin, that there was nothing that he could replace it with and that Plaintiff's only option would be to purchase Tylenol.

On December 6, 2013, Plaintiff was examined by Dr. Wijayagunaratne who ordered a back x-ray and offered Plaintiff 325mg of Tylenol. Plaintiff was already taking 800mg of Ibuprofen which was not effective alone, so he refused the prescription for Tylenol. Plaintiff did receive a six month prescription for Tylenol which was discontinued without any explanation. Plaintiff was told to make a request to Corizon Health Care's Pain Management Committee to obtain a stronger medication. Plaintiff made two requests to visit mental health services, but never received a response. Plaintiff filed a grievance, but Defendant Robare allegedly tricked Plaintiff to sign-off on the grievance. Plaintiff's request to Corizon Health Care for a stronger medication was denied on March 20, 2014, by Defendant Dr. Jeffrey Stieve. On July 1, 2014, Dr. Wijayagunaratne

informed Plaintiff that "no one has ever died from pain" and "God doesn't want us putting all these chemicals in our bodies." Plaintiff believes that there exists an informal policy carried out by defendants to deny treatment and medications in an effort to increase profits. Plaintiff has alleged that Defendants violated his Eighth Amendment rights by failing to provide proper medical care and mental health care and by subjecting him to unnecessary pain. Defendants Amy Robare and Dr. Jeffery Stieve move for summary judgment, arguing that Plaintiff failed to exhaust his administrative grievance remedies against them prior to filing this lawsuit.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot

sustain his burden at trial.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d

4

641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III

5

form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Plaintiff filed three grievances that he appealed to Step III. Two of the Step III grievances were filed after Plaintiff filed this complaint in August 2014. Plaintiff only exhausted one grievance before filing this lawsuit. In MBP-13-12-2192-12f3 Plaintiff did not mention Defendant Robare or Defendant Stieve in the grievance. In fact, at the time Plaintiff submitted this grievance, he had not been denied anything by Defendant Stieve. In the opinion of the undersigned, Defendant Robare and Defendant Stieve should be dismissed.

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (Docket #14) be granted, dismissing Defendant Robare and Defendant Stieve without prejudice.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2015

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).