UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROGER YEADON,

    Plaintiff,

v.

Case No. 2:14-cv-178
HON. GORDON J. QUIST

PRIYANIHA WIJAYAGUNARATNE,
et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Roger Yeadon filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants, including Defendant Corizon Health, Inc.[1] Defendant Corizon Health, Inc., moves for summary judgment. (ECF No. 63). Plaintiff has not responded to Defendant's motion. Plaintiff alleges that he was transferred to Marquette Branch Prison (MBP) on November 21, 2013, after being in the custody of the Federal Bureau of Prisons for fourteen years. Plaintiff complains that he was treated for long term back and spine issues, including the loss of sensation in his right upper leg. Plaintiff initially was prescribed Tylenol and Ibuprofen, which were ineffective. In 2007 and 2008, Plaintiff was prescribed Percocet, a mild narcotic, that effectively relieved his pain. Plaintiff was transferred to a new prison in 2008, and his new treating doctor changed his prescription to Gabapentin. This medicine proved less effective than Percocet, but

---

[1] Defendant Mental Health Services has moved for dismissal which is addressed in a different recommendation. Defendant Wijayagunaratne and Defendant Unknown Party have not been served with a summons and complaint.

limited the pain to a tolerable level. However, because Percocet can become habit forming, the doctor wanted to get Plaintiff off that medication.

Plaintiff alleges that from September 2008 to November 2013, he was transferred to six different federal prisons and examined by six different doctors. All six doctors continued him on Gabapentin and listed Plaintiff's condition as chronic. In 2008, Plaintiff was treated with Wellbutrin for depression and continued on that medication until his transfer to MBP.

On November 21, 2013, Plaintiff was screened by Amy Robare after he was transferred to MBP. Plaintiff was informed that he would not receive Wellbutrin because it was not prescribed at MBP. Plaintiff was informed that he would have to kite mental health service at the prison to obtain a substitute. That afternoon during rounds, a nurse informed Plaintiff that he would not receive any more Gabapentin medication once his supply ran out. Plaintiff was examined on November 25, 2013, by Dr. Wijayagunaratne. Dr. Wijayagunaratne told Plaintiff that he would not prescribe him Gabapentin, that there was nothing that he could replace it with, and that Plaintiff's only option would be to purchase Tylenol.

On December 6, 2013, Plaintiff was examined by Dr. Wijayagunaratne who ordered a back x-ray and offered Plaintiff 325mg of Tylenol. Plaintiff was already taking 800mg of Ibuprofen which was not effective alone, so he refused the prescription for Tylenol. Plaintiff did receive a six month prescription for Tylenol which was discontinued without any explanation. Plaintiff was told to make a request to Corizon Health Care's Pain Management Committee to obtain a stronger medication. Plaintiff made two requests to visit mental health services, but never received a response. Plaintiff's request to Corizon Health Care for a stronger medication was denied on March 20, 2014, by Dr. Jeffrey Stieve. On July 1, 2014, Dr. Wijayagunaratne informed Plaintiff that

"no one has ever died from pain" and "God doesn't want us putting all these chemicals in our bodies."  Plaintiff believes that there exists an informal policy carried out by defendants to deny treatment and medications in an effort to increase profits.  Plaintiff has alleged that Defendants violated his Eighth Amendment rights by failing to provide proper medical care and mental health care, and by subjecting him to unnecessary pain.  Plaintiff claims that the Defendants have refused to provide him with the medication that he needs.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Dr. Jeffrey Bomber, Regional Medical Director for Corizon Health, Inc., submitted an affidavit in support of Defendant Corizon Health, Inc.'s motion for summary judgment. Dr. Bomber attests that when Plaintiff was transferred from federal prison to the custody of the MDOC, medical personnel were notified that Plaintiff was taking Neurontin for back pain. In December, 2013, Plaintiff was seen by P.A. Jayson Vayre. At that time, Plaintiff claimed that he had nerve damage from a motorcycle accident in 1999, and a couple of assaults. Plaintiff complained of isolated pain in his lower right back. P.A. Vayre found that Plaintiff was not in acute distress, but walked with a limp while holding the left side of his back, which seemed inconsistent with his verbal complaints of right back pain. P.A. Vayre found no abnormality of Plaintiff's back or spine, and no abnormality in the thoracic curvature. P.A. Vayre found no kyphosis or scoliosis, and straight leg tests were negative. As a result, P.A. Vayre, recommended that Plaintiff perform light stretching and exercise daily to relieve his back pain. Plaintiff was provided Tylenol. Plaintiff requested

Neurontin, but P.A. Vayre found no evidence that Neurontin was medically indicated and ordered X-rays of Plaintiff's spine.

Plaintiff met with P.A. Vayre on January 21, 2014, to review the results of the X-rays. No serious pathology was discovered, and the findings were consistent with P.A. Vayre's examination. Plaintiff was found to have mild to moderate lumbar degenerative disease at L4-L5. Low dose Tylenol was continued because of Plaintiff's subjective complaints. Plaintiff has hepatitis C, which requires pain medications such as Tylenol to be used in moderation due to concerns of liver damage. Plaintiff was provided with back strengthening and stretching exercises.

On February 14, 2014, Plaintiff was seen for back pain. Plaintiff filled out a form to send to the Pain Management Committee for consideration of his complaints of pain. The Pain Management Committee is a three member body of the MDOC, which can be a resource for medical providers to help determine the appropriate treatment plans for inmates who suffer with chronic pain. Plaintiff was examined on March 4, 2014, for consideration by the Pain Management Committee. The examination revealed no abnormalities. On March 19, 2014, the Pain Management Committee recommended that Plaintiff engage in self massage, use heat, and use range of motion and stretching exercises for relief. The Pain Management Committee also informed Plaintiff that losing weight and walking twice a day would provide him some relief of his complaints of pain. Plaintiff was seen on April 29, May 2, July 1 and August 29, 2014, for complaints of back pain. Plaintiff received Ibuprofen after indicating that it worked better than Tylenol. Plaintiff was provided with an order for a bottom bunk to accommodate his request.

In the opinion of the undersigned, Plaintiff has failed to support his claim that he was denied medical care by Defendant Corizon Health, Inc. Plaintiff was not denied medical care. In

fact, Plaintiff was provided with medical care, pain medication, and provided with instructions for stretching and exercises that could help relieve his complaints of pain. Plaintiff merely disagrees with his diagnosis. Plaintiff believes that he should have been provided a different pain medication that Defendant had determined was not medically necessary. Plaintiff argues that Defendant failed to provide him with the medication that he believes is necessary as a cost saving decision. Plaintiff believes that Defendant has a policy of not providing medication in an effort to save money. However, Plaintiff has come forth with nothing to support his claim. Plaintiff has presented no evidence which contradicts any of his medical providers and no basis for this court to impose liability on Defendant Corizon Health, Inc. For that reason, it is recommended that Defendant Corizon Health, Inc., be dismissed from this action.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant Corizon Health, Inc.'s motion for summary judgment. Accordingly, it is recommended that Defendant Corizon Health, Inc.'s motion for Summary Judgment (ECF No. 63) be GRANTED.[2]

---

[2] I have also recommended that the court dismiss Defendant Mental Health Services in a Report and Recommendation. Defendants WiJayagunaratne, and Unknown Party have not been served with a summons and complaint. If the court accepts the recommendations to dismiss the remaining parties that have been served with a summons and complaint, and Plaintiff has still failed to serve Defendant Wijayagunaratne and Defendant Unknown Party leaving no Defendant left in this action the court must decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motions, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendations and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: November 6, 2015

 /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE